# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| LLOYD A KING, a minor by LAKEISHA KING, his mother, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | 06 C 3497 |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) ) ) ) | Judge Ronald A. Guzmán |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lloyd King, Jr., a minor, by his mother, Lakeisha King, has appealed the denial of his claim for Social Security disability benefits. Before the Court are the parties' cross-motions for summary judgment. For the reasons provided in this Memorandum Opinion and Order, the Court grants plaintiff's motion for summary judgment, denies defendant's cross-motion and remands the case to the Administrative Law Judge for further proceedings consistent with this opinion.

## Procedural History

On December 31, 2003, Lakeisha King protectively filed an application for supplemental security income ("SSI") for Lloyd King, Jr. based on disability, which began on June 1, 1999. (R. 51.) His claim was denied initially and on reconsideration. (R. 24-25.) At his request, a hearing was held on March 14, 2006. (R. 385.) At the hearing, Lakeisha and Lloyd testified. (R. 385-416.) In addition, Lloyd's school records, medical records, and reports of his recent medical treatment and medications were admitted into the record. (R. 171-384.)

On March 28, 2006, Administrative Law Judge ("ALJ") Cynthia M. Bretthauer found that Lloyd was not disabled under Section 1614(a)(3)(C) of the Social Security Act, and thus he was not entitled to SSI. (R. 22.) On April 10, 2006, Lloyd filed a request for review of the hearing decision. (R. 8.) On May 9, 2006, the Appeal Council concluded that there was no basis under the Social Security Administration regulations for granting the request for review of the ALJ's decision. (R. 5.) Therefore, the ALJ's decision stands as the final decision of the Commissioner of Social Security. *See* 20 C.F.R. § 416.1418. On June 27, 2006, the instant action was filed.

### Statement of Facts

Lloyd was ten years old at the time of the hearing on March 14, 2006. He had been under the care of psychiatrists at Lake County Mental Heath Department and was in special education at the school that he attended in Zion, Illinois. (Pl.'s Reply Br. Supp. Pl.'s Mot. Summ. J. & Resp. Def.'s Mot. Summ. J. 1). In addition, during the pendency of the Social Security claim, Lloyd had behavioral problems, was taking medication for psychological problems, and was under the care of Dr. Javed at Lake County Mental Health Department.

### Claimant's Mother's Testimony

At the hearing before the ALJ on March 14, 2006, claimant's mother, Lakeisha King, testified that Lloyd was ten years old, in the third grade *i.e.*, one year behind the correct grade for his age, and in special education half the day for reading, math, social studies and writing. (R. 390.) According to the most recent progress reports, Lloyd is reading at the 1.1 level and his grades are satisfactory. (R. 391.) He has problems with his behavior in school, but the special education placement and the medication have helped him with that. (*Id.*) He takes Concerta at

school once a day and he takes half an Abilify before school and the other half after school. (R. 392.) Lloyd meets with his psychiatrist, Dr. Javed from the Lake County Health Department, once a month. (R. 392-93.) He also meets with a school counselor named Dusty once a week. (R. 393.) Lloyd has received some suspensions from school. (R. 394.) The last one was in January of 2006. (R. 395.) He has trouble keeping friends because he is always conning them out of money, stealing from them and hitting the girls. (*Id.*) He rushes through his homework and there are lots of wrong answers. (*Id.*) Lloyd's mother testified that he is supposed to do chores around the house but unless she is watching him, he will go back to playing. (R. 396.) Lloyd's mother also has to remind him to take care of himself, to brush his teeth, bathe, comb his hair, etc. (*Id.*)

Lloyd lives with his mother and his two sisters. (R. 354.) He hits his younger sister, but does not bother his older sister. (R. 397.) His father is presently incarcerated. (R. 397.) In 2003, Lloyd was sexually assaulted while playing in a park near his home. (R. 395.) Lloyd told his mother that he hears a voice named Sam that tells him to do bad things. (R. 399-400.) However, she is not sure whether to believe him because he is a compulsive liar. (R. 400.) The Sam voice began after Lloyd was sexually assaulted in the park. (R. 401.) Lloyd began taking Abilify on February 7, 2006, for the hallucinations, and since then he has not been hearing the voice like he used to. (R. 401-403.)

**Claimant's Testimony**

Lloyd testified that he likes school, that it is easier for him now that he is in a smaller special education class, and his favorite subject is math. (R. 406.) His least favorite class is reading but recently he won a reading contest. (R. 407.) He likes playing basketball when he is

not at school. (R. 408.) He has friends but only one of them comes over to his house to play. (R. 407.) He loses attention and concentration at school because sometimes he doesn't understand what the teacher is saying. (R. 408.) That is when he starts doing things he is not supposed to do like talking to other kids or moving around. (*Id.*) He has been suspended a couple of times when he has gotten mad and hit someone. (R. 409.) He has been seeing a counselor and a psychiatrist to work on ways to handle his anger, like not hitting people when he is mad. (*Id.*) He is taking medicine now which he thinks is helping him. (R. 409-10.) Sometimes he doesn't do things like take a bath or shower, brush his hair, brush his teeth or get dressed and his mother has to remind him to do it. (R. 411.) He has two sisters, and sometimes he hits his younger sister when she messes with his stuff. (*Id.*) Lloyd also testified that he used to hear a voice in his head named Sam who would tell him to do bad stuff, but that he does not hear Sam anymore since he started taking his new medicine (Abilify). (R. 415-16.)

**Psychological Exam**

On November 3, 2005, Lloyd's intellectual functioning was formally assessed on the Wechsler Intelligence Scale for Children-Fourth Edition where Lloyd's verbal reasoning, nonverbal reasoning, verbal processing skills (working memory) and nonverbal processing skills (processing speed) were all in the low average range. (R. 224.)

**Medical and School History Findings**

On January 11, 2005, an "Initial Assessment Child and Adolescent" form was completed. (R. 351-55.) The history noted that two years prior he had been sexually assaulted in the park. He was in Special Education and had a learning disability and school behavioral problems. His

functioning was described as having difficulty in school, difficulty remembering and talking to himself occasionally, and low intelligence as noted by his mother. (R. 353.) It was reported that Lloyd had a history of anger outbursts at school and at home. He had thrown garbage cans around, hit his teacher, and stabbed and slapped another child while at school. (R. 351.) The diagnosis in the initial assessment form under Axis I is Attention Deficit Disorder ("ADD"), Depressive Disorder NOS (not otherwise specified), PTSD (Post Traumatic Stress Disorder); under Axis II and III the form states "none noted," and under Axis IV, the form states "problems in schools, failed two grades," and under Axis V, his "Global Assessment of Functioning" was listed at 50. (R. 345.) A treatment plan was developed for Lloyd that included individual counseling, family counseling and group counseling with psychiatric services and children and adolescent behavior services.

Dr. Javed evaluated Lloyd for psychiatric services on January 25, 2005. At that time, Dr. Javed diagnosed Lloyd with ADD and PTSD and prescribed the medication Concerta for the ADD. The record contains Dr. Javed's treatment progress notes for Lloyd through February 21, 2006. Dr. Javed noted several behavior problems including bullying people, inappropriate touching of peers, throwing his desk, fighting and getting suspended at school and lying, stealing and generally hyperactive, oppositional, and argumentative behavior at home. (R. 360-383.) On February 7, 2006, Dr. Javed noted that client had been talking to himself and hearing a voice telling him to do bad things like "jump off" and "not listen to mom." At that time, Dr. Javed added Psychotic Disorder NOS to Lloyd's diagnosis and prescribed Abilify.[1] (R. 382.) Dr. Javed's final progress note in the record dated two weeks later on February 21, 2006, indicates

---

[1] The ALJ decision incorrectly states that Lloyd had been taking both Concert and Abilify since May 2005. Lloyd began taking Concerta in January 2005 (R. 359) and began taking Abilify in February 2006. (R. 383.)

that Lloyd was responding well to the Abilify, had won a reading contest, had not heard the voice, and had not displayed anger, aggression or fighting. (R. 383.)

Lloyd's school records include progress reports indicating that he was having problems following directions, listening carefully, working without distracting others, working independently and respecting his classmates. (R. 113.) Lloyd has received several suspensions from school for behavior such as fighting with another student (R. 115), slapping and stabbing a student with a pencil (R. 124), pushing two students (R. 125) and fighting before school (R. 219). The most recent progress report in the record, dated February 24, 2006, noted that Lloyd's behavior was improving and he was receiving all Bs and Cs. There are no additional school or medical reports in the record after February 2006.

## Discussion

Judicial review of the Commissioner's final decision is authorized by § 405(g) of the Act. *See* 42 U.S.C. § 405(g). The court may affirm, modify, or reverse the ALJ's decision, or may remand the proceeding for rehearing or hearing of additional evidence. *Id.* In reviewing this decision, the court does not engage in its own analysis of whether Lloyd is disabled. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) (internal citations omitted). Instead, the court reviews the record as a whole to determine whether the ALJ applied the correct legal standards in reaching a decision and whether there is substantial evidence in the record to support the findings." 42 U.S.C. §§ 405(g), 1383(c)(3); *Washington v. Barnhart*, 481 F. Supp. 2d 905, 912 (N.D. Ill. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003) (citations omitted). The court must critically review the ALJ's decision to ensure that she

has "rationally articulated the grounds for her decision" and built an "accurate and logical bridge from the evidence to her conclusion." *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002). The reasons articulated for the decision must enable a reviewing court to trace the path of the ALJ's reasoning. *Pena v. Barnhart*, No. 01 C 50455, 2002 WL 31527202, at *5 (N.D. Ill. Nov. 13, 2002). Where the decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele*, 290 F.3d. at 941.

A child can be eligible for SSI benefits on the basis of disability if he can show that he has a medically determinable physical or mental impairment(s) that causes marked and severe functional limitations and that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(C)(i). Whether a child meets this definition requires the following three-step inquiry: (1) whether the child is engaged in substantial gainful activity; (2) whether the child has a severe impairment; and (3) whether the child meets or equals a listed impairment. 20 C.F.R. § 416.924. Under the third step in a child's SSI claim, where the child is not working and has a severe impairment, the ALJ must determine whether the child's impairments meet, medically equal, or functionally equal the listings. 20 C.F.R. § 416.924a. The listings describe impairments for each of the major body systems that are considered severe enough *per se* to prevent a person from doing any significant gainful activity. 20 C.F.R § 404.1525(a). If the child is not working, and has a severe impairment, but the impairment does not meet or equal a listed impairment, the ALJ must then assess the child's functional abilities, together with other relevant evidence, to determine whether the child is disabled. 20 C.F.R. § 416.924a.

To determine functional equivalence, the ALJ must examine all relevant information in the case record and determine a child's level of functioning in "six domains." 20 C.F.R. §

416.926a(b)(1). Such information considered should include all evidence from medical and non-medical sources such as "parents, teachers, and other people that know [the claimant] that can help [the Commissioner] understand how [the claimant's] impairment(s) affect [his/her] ability to function." 20 C.F.R. § 416.924d. The six domains include: acquiring and using information; attending to and completing tasks; interacting with and relating to other people; moving about and manipulating objects; caring for oneself; and health and physical well-being. 20 C.F.R. § 416.926a(b)(1). In assessing the six domains, the ALJ must compare how appropriately, effectively, and independently the claimant performs activities compared to the performance of other children of the same age who do not have impairments. 20 C.F.R. § 416.926a(b). If a child has "marked" limitations in two of the domains or an "extreme" limitation in one domain, then his impairments will functionally equal the listings and he will be found disabled. 20 C.F.R. § 416.926a(a).

A limitation is "marked" in a domain if an impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). More generally, a "marked" limitation "also means a limitation that is 'more than moderate' but 'less than extreme'" *Id.* An "extreme" limitation occurs when there is "no meaningful functioning in a given area." 20 C.F.R. § 416.926a(e)(3)(i).

Proceeding under the forgoing framework, ALJ Bretthauer concluded that Lloyd was not disabled within the meaning of the Act. (R. 9.) At step one, she found that Lloyd has not engaged in substantial gainful activity. (R. 15.) At step two, she found that Lloyd has ADHD and ODD, both of which constitute "severe" impairments within the meaning of 20 C.F.R. § 416.924(c). (*Id.*) At step three, however, she found that Lloyd's impairments did not meet or medically equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, and further did not

functionally equal the severity of a listing because Lloyd did not have an "extreme" limitation in any domain of functioning, or a "marked" limitation in any two domains. (*Id.*)

However, the ALJ failed to articulate rationally the grounds for her decision and failed to build an accurate and logical bridge between the evidence and her conclusion. First, in determining whether Lloyd's impairment or combination of impairments meets or medically equals one of the listed impairments the ALJ simply makes a conclusory statement that Lloyd does not meet or equal sections 112.08 or 112.11 because the "B" criteria of those sections is not met under section 112.02(B). (R. 14.) The ALJ never states what evidence her conclusion is based on other than to say "as discussed below." Before moving on to determine if Lloyd's impairment *functionally* equals the listing for ADHD, the ALJ must first go through the process to determine whether the Plaintiff can or cannot meet or medically equal the listing for ADHD. *Pena*, 2002 WL 31527202, at *13. The Court is not suggesting that the ALJ's determination, that the severity of Lloyd's ADHD does not satisfy the requirements in listings 112.08 or 112.11 is incorrect, only that greater elaboration is necessary. The ALJ must at least explain which evidence she accepted, which evidence she rejected and why.

Even if the Court disregards the ALJ's lack of articulation regarding the reasons why Lloyd failed to meet or medically equal one of the listed impairments, the ALJ also failed to articulate adequately her reasons or build a logical bridge between the evidence and her conclusion that Lloyd does not have an impairment that functionally equals the listing. The ALJ begins her discussion regarding functional equivalence by restating the testimony of Lloyd and his mother from the hearing. (R. 15-17.) The ALJ then states "[a]fter considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the statements concerning the

intensity, duration, and limiting effects of the claimant's symptoms are not entirely credible." (R. 15.) The ALJ's evaluation fails to provide "specific reasons" for her finding that Lloyd and his mother's statements regarding Lloyd's impairments are not entirely credible.[2] *See* Social Security Reg. 96-7p; *see also Steele*, 290 F.3d at 941-42. The ALJ did not apply the factors for evaluating symptoms set forth in Social Security Regulation 96-7p, such as determining the degree to which claimant's mother's or claimant's testimony about his limitations were consistent with the medical evidence or the ALJ's own observations. *See Steele*, 290 F. 3d at 942.

The ALJ then summarizes the evidence in the record.[3] Following the summary there is a short conclusory paragraph, indicating that Lloyd cannot be found disabled. This conclusion appears to be based solely on a February 21, 2006 progress report that noted some improvement in Lloyd's overall behavior following two weeks on Abilify. (R. 17-18.) The ALJ then goes through each of the six domains by providing the factors that are described in the regulations followed by a one sentence statement that Lloyd has either a less than marked limitation in that

---

[2]Social Security Ruling 96-7p applies to the ALJ's evaluation of an applicant's description of symptoms and provides: "It is not sufficient for the adjudicator to make a single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.' It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."

[3]It should be noted that the ALJ incorrectly said that Lloyd began medication therapy in May 2005. According to Dr. Javed's progress reports, Lloyd began taking Concerta for ADHD in January 2005 (R. 359) and began taking Abilify in February 2006 after he reported to Dr. Javed that he had been hearing a voice telling him to do bad things. (R. 383.)

domain or no limitation in that domain. (R. 18-21.)[4] There are no reasons given for the determination and no bridge from the evidence to the conclusion. For example, the ALJ gives no explanation as to why Lloyd has a less than marked limitation in acquiring and using information. (R. 18.) The record contains an agency evaluation report by Dr. Keith Bauer, Ph.D, dated May 20, 2004, which indicates that Lloyd had a marked limitation in the acquiring-and-using-information domain. (R. 314.) The ALJ's opinion makes no mention of Dr. Bauer's evaluation and fails to explain whether that determination was considered or how much weight it was given, if any. Further, the record contains a great deal of evidence that Lloyd has difficulty staying on task and paying attention. The ALJ's conclusion, that Lloyd has a less than marked limitation in attending and completing tasks, does not address that evidence supporting Lloyd's diagnosis of ADD or explain the evidence upon which her conclusion was based.

This Court cannot determine whether the ALJ's conclusion was supported by substantial evidence because the ALJ failed to discuss which evidence she based her conclusions on and why. Thus, the case must be remanded. Upon remand, the ALJ should reevaluate Lloyd, who is now a bit older, to get an up to date determination of his condition. *See Pena*, 2002 WL 31527202, at *13. Specifically, the ALJ should obtain expert testimony from a medical professional or an updated progress report from Dr. Javed to determine how Lloyd is responding to his medication.[5] The ALJ should also obtain updated questionnaires and progress reports from

---

[4]The plaintiff argues that the ALJ failed to make a finding regarding Lloyd's limitations in the acquiring-and-using-information domain, but upon closer reading of the ALJ decision, there appears to be a formatting error. The ALJ's determination that Lloyd has less than marked limitation in acquiring and using information is next to the label "b" for the second domain of attending and completing tasks. Thus, the ALJ provided a conclusion, but no analysis, as to this domain.

[5]The ALJ admitted that there was not enough information in the record to discern Dr. Javed's assessment of Lloyd's impairments. (R. 401.)

Lloyd's teachers to reevaluate his behavior at school. Finally, the ALJ should make a new determination as to whether Lloyd has marked limitations in the domains of Acquiring and Using Information, Attending and Completing Tasks and Interacting and Relating with Others and, in her discussion of the evidence, the ALJ should provide a thorough explanation of how she weighed the conflicting evidence to reach her conclusion.

## Conclusion

For the foregoing reasons, the Court grants plaintiff's motion for summary judgment [doc. no. 12] and denies defendant's cross-motion [doc. no. 21]. The Commissioner's decision to deny benefits is reversed, and this matter is remanded for further proceedings consistent with this opinion.

SO ORDERED.   ENTERED: 11/30/07

RONALD A. GUZMAN
United States District Judge